Bharati Sharma Patel, Esq. – NJ Attorney ID Number 018432001
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 – Suite 101
North Brunswick, NJ 08902
(732) 545-7900 – TELEPHONE
(732) 545-1030 – FAX
Attorneys for Plaintiff, Deborah Pierre-Charles

| | |
|---|---|
| DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY COUNTY – LAW DIVISION |
| Plaintiff, | Civil Action: |
| vs. | Docket No. MER-L-002058-17 |
| CONSUMER PORTFOLIO SERVICES, INC., | SUMMONS |
| Defendant. | |

From: The State of New Jersey
To: Consumer Portfolio Services, Inc.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:  September 27, 2017

/s/ *Michelle M. Smith*
    Michelle M. Smith
    Clerk of the Superior Court of New Jersey

*Name of defendant to be served*:    **CONSUMER PORTFOLIO SERVICES, INC.**

*Address for service*:    c/o The Corporation Trust Company, Registered Agent
820 Bear Tavern Road
West Trenton, NJ 08628
**(VIA GUARANTEED SUBPOENA)**

Bharati Sharma Patel – NJ Attorney ID Number 018432001
THE WOLF LAW FIRM, LLC
1520 U.S. Highway 130 – Suite 101
North Brunswick, NJ  08902
(732) 545-7900 –  tel; (732) 545-1030 –  fax

Christopher J. McGinn - NJ Attorney ID Number 040832001
THE LAW OFFICE OF CHRISTOPHER J. MCGINN
20 Nassau Street, Suite 250W-2
Princeton, NJ 08542
(732) 937-9400 – tel; (800) 931-2408 – fax

*Attorneys for Plaintiff and others similarly situated*

| | |
|---|---|
| DEBORAH C. PIERRE-CHARLES, on behalf of herself and others similarly situated, | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY - LAW DIVISION |
| Plaintiff, | |
| vs. | Docket No.: MER-_____ |
| | CIVIL ACTION |
| CONSUMER PORTFOLIO SERVICES, INC., | |
| Defendant. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

## NATURE OF CASE

1.    Plaintiff Deborah C. Pierre-Charles seeks damages under the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.* and the New Jersey Uniform Commercial Code ("UCC") N.J.S.A. § 12A:9-102 *et seq.* on behalf of herself and others similarly situated for claims against Defendant Consumer Portfolio Services, Inc. ("CPSI") related to two unlawful schemes.  First, CPSI transported the vehicles repossessed from Plaintiff and other similarly situated residents of New Jersey to auctions held at far away lower demand car dealer regions such as Little Rock, Arkansas, resulting in lower sale prices and higher transportation and title processing fees.  Second, CPSI charged Plaintiff and others similarly situated improper fees as a condition of releasing personal property taken from their repossessed motor vehicles.

2.      Plaintiff also brings individual claims under common law and under the CFA regarding CPSI's practice of failing to take reasonable efforts to cause the return of personal property in her vehicle's trunk at the time of the repossession.  CPSI failed to remove that property from her vehicle's trunk before sending her vehicle to Arkansas and refused to respond to her requests to obtain that property.

### VENUE

3.      Venue in this action properly lies in Mercer County because Defendant is a foreign corporation that regularly conducts business in Mercer County, including but not limited to the filing of documents with the New Jersey Motor Vehicle Commission, repossessing vehicles from Mercer County locations, taking assignment of Retail Installment Sales Contracts from Mercer County motor vehicle dealers, and taking assignment of Retail Installment Sales Contracts entered into by Mercer County residents.

### PARTIES

4.      Plaintiff Deborah C. Pierre-Charles resides in Raritan, New Jersey.

5.      Defendant Consumer Portfolio Services, Inc. ("CPSI") is a California corporation with a main business address of 19500 Jamboree Road, Irvine, California.

6.      CPSI has a principal place of business address of 3800 Howard Hughes Parkway, Las Vegas, Nevada.

7.      CPSI has a New Jersey registered agent located at 820 Bear Tavern Road, West Trenton, New Jersey.

8.      CPSI is licensed as a sales finance company and as a consumer lender by the New Jersey Department of Banking & Insurance.

9.      CPSI regularly repossesses vehicles of New Jersey residents.

## ALLEGATIONS OF FACT

### CPSI Purchased Plaintiff's Retail Installment Contract that Was Secured by a Collateral Vehicle for which the Seller Had Not Perfected a Security Interest

10.    On or about December 19, 2015, Plaintiff Deborah C. Pierre-Charles purchased a 2013 Nissan Altima VIN 1N4AL3AP5DN540953 ("the Nissan" or "the vehicle") from a New Jersey motor vehicle dealer called MJ's Auto Sales for a price of $15,255.

11.    Plaintiff traded-in her Toyota Corolla as part of her purchase of the Nissan from MJ's Auto Sales, for which she was given a credit of $2,000.

12.    As part of her sales transaction, she entered into a sales contract and a Retail Installment Sales Contract ("RISC") with the dealership.  A copy of RISC is attached as **Exhibit A**.

13.    The RISC included the following provisions:

a.   We may take the vehicle from you. If you default we may take (repossess) the vehicle from you if we do so peacefully and the law allows it...If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

b.   How you can get the vehicle back if we take it.  If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

c.   We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

d.   What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurances, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of

MER-L-002058-17   09/20/2017 1:08:42 PM  Pg 4 of 64 Trans ID: LCV2017227829
Case 3:17-cv-10025-DEA   Document 1-1   Filed 10/30/17   Page 6 of 68 PageID: 10

unearned charges to reduce what you owe.

14. The RISC indicates that MJ's Auto Sales charged Plaintiff a fee of $149 for "Government Certificate of Title Fees".

15. When Plaintiff took possession of the Nissan, MJ's Auto Sales provided her with a temporary New Jersey registration for the Nissan.

16. Plaintiff subsequently made her first payment to MJ's Auto Sales.

17. MJ's Auto Sales did not provide Plaintiff with the title or a permanent registration for the Nissan.

18. Sometime during the period from December 19, 2015 to December 23, 2015, CPSI took assignment of the RISC.

19. On December 23, 2015, CPSI sent Plaintiff a letter, attached as **Exhibit B**, stating that CPSI had taken assignment of her RISC.

20. At the time that CPSI took assignment of the RISC, MJ's Auto Sales did not hold a New Jersey title to the Nissan.

21. At the time that CPSI took assignment of the RISC, the Nissan's title did not indicate that it had been purchased by Plaintiff.

22. At the time that CPSI took assignment of the RISC, no title for the Nissan identified CPSI or MJ's Auto Sales as a lienholder for the Nissan.

23. Plaintiff's temporary registration expired on or about February 14, 2016.

24. On January 19, 2016, Plaintiff received a text message from a representative of MJ's Auto Sales that the dealership had gone out of business.

25. CPSI took assignment of Plaintiff's RISC for the purchase of the Nissan from MJ's Auto Sales.

26. MJ's Auto Sales did not obtain a lien on the title of the Nissan in CPSI's name or provide

CPSI with the vehicle's title or a copy of the title.

27. When MJ's Auto Sales sold the Nissan to Plaintiff, MJ's Auto Sales held a title for the Nissan that had been issued by the Tennessee Motor Vehicle Commission.

28. At no time did MJ's Auto Sales or any other entity obtain a lien on the title of the Nissan recognizing MJ's Auto Sales' security interest stemming from Plaintiff's purchase of the Nissan.

29. CPSI did not obtain the Nissan's title from MJ's Auto Sales.

30. MJ's Auto Sales never provided Plaintiff with the Nisan's title or registration.

31. Plaintiff attempted to obtain title and registration for the Nissan from MJ's Auto Sales but was unsuccessful.

32. MJ's Auto Sales went out of business soon after Plaintiff's purchase.

33. When Plaintiff attempted to obtain title and registration from the New Jersey Motor Vehicle Commission (NJMVC), a representative of the NJMVC told her that the Nissan had never been titled in New Jersey.

34. The representative of the NJMVC told Plaintiff that it had received a number of complaints from consumers that had purchased vehicles from MJ's Auto Sales regarding titles of vehicles.

35. Plaintiff informed CPSI that she was never provided title and could not drive the vehicle without registration.  She requested assistance from CPSI in attempting to obtain legal title to the Nissan but CPSI refused to provide any such assistance.

36. On December 23, 2015, CPSI sent Plaintiff a letter stating that CPSI had taken assignment of her RISC.

37. At the time that CPSI took assignment of the RISC, MJ's Auto Sales did not hold a New Jersey title to the Nissan.

38.  At the time that CPSI took assignment of the RISC, the Nissan's title did not indicate that it had been purchased by Plaintiff.

39.  At the time that CPSI took assignment of the RISC, no title for the Nissan identified CPSI or MJ's Auto Sales as a lienholder for the Nissan.

**CPSI Repossessed the Nissan without Having Perfected Its Security Interest**

40.  In the spring of 2016, CPSI initiated a process to repossess the Nissan.

41.  When CPSI arranged for its agent to repossess the Nissan, CPSI knew or should have known that: a) it did not hold a lien on the Nissan's title; b) it did not possess the Nissan's title; and c) Plaintiff did not hold title to the Nissan.

42.  When CPSI arranged for its agent to repossess the Nissan, it intended to dispose of the Nissan by sale at auction.

43.  At the time CPSI directed its agent to repossess Plaintiff's Nissan, CPSI had actual knowledge that it did not hold a lien on the Nissan's title.

44.  To repossess Plaintiff's Nissan, CPSI or its agents retained the services of American Lending Solutions, a Charlotte, North Carolina based company that holds itself out to the public as a "skip tracing and repossession management company".

45.  In June of 2016 American Lending Solutions directed Pitbull Recovery, LLC ("Pitbull") to repossess Plaintiff's Nissan.

46.  Pitbull is a Hopatcong, New Jersey based company that repossesses motor vehicles.

47.  On or about June 22, 2016, Pitbull repossessed Plaintiff's Nissan.

**CPSI Unlawful Disposition of Plaintiff's Vehicle and Personal Property**

48.  Pitbull was paid by CPSI or its agents for its services related to Pitbull's repossession of the Nissan.

49.  Pitbull was authorized by CPSI or its agents to repossess Plaintiff's Nissan.

50. At the time CPSI repossessed Plaintiff's Nissan, CPSI or its agents had an agreement with Pitbull regarding a variety of services to be performed in conjunction with the repossession of collateral vehicles and fees to be paid in conjunction with such services, referred to here as the CPSI-Pitbull Agreement.

51. The CPSI-Pitbull Agreement included provisions where CPSI authorized Pitbull to perform services related to the repossession of vehicles including but not limited to:

   a) locating and taking possession of collateral motor vehicles;

   b) transporting and storing collateral vehicles;

   c) serving as a constructive bailee for personal property contained in the collateral vehicles at the time of repossession;

   d) serving as a constructive bailee for repossessed vehicles;

   e) releasing to consumer obligors or their agents personal property contained within collateral vehicles at the time of repossession;

   f) releasing to consumer obligors or their agents repossessed collateral vehicles; and

   g) creating and maintaining certain records related to the services that Pitbull performed on behalf of CPSI.

52. Pitbull transported the vehicle to Pitbull's lot located at 48 Lakeside Boulevard, Hopatcong, New Jersey.

53. At the time Plaintiff's Nissan was repossessed, property owned and/or held by Plaintiff was located in the passenger compartment and the trunk of the vehicle.

54. At the time of the repossession, Plaintiff was scheduled to move in a few days and much of the property owned and/or held by Plaintiff was in the trunk of the vehicle, including but not limited to clothing, boots, vases, and two cable boxes.

55. Pitbull removed Plaintiff's possessions from the passenger compartment of the Nissan but did not remove any property from the vehicle's trunk.

56. Following the repossession, Plaintiff called CPSI Services and asked how she could re-

obtain her possessions that were in the vehicle. A representative from CPSI informed her that she should visit the Pitbull location where the vehicle was located.

57. On July 22, 2016 Plaintiff travelled to Pitbull Recovery, LLC to collect her personal property from the Nissan.

58. A representative of Pitbull told Plaintiff that it only possessed the property that was in the passenger compartment of the car and did not possess the items that had been in the Nissan's trunk.

59. The Pitbull representative told Plaintiff that she would need to contact CPSI to inquire about her possessions that were in the trunk as CPSI had transported the Nissan to Arkansas.

60. The Pitbull representative told Plaintiff that if she wanted to obtain her Nissan she would need to travel to Arkansas as the vehicle had been shipped to that state to be sold at auction.

61. The Pitbull representative told Plaintiff that she would have to pay Pitbull $95 in cash if she wanted Pitbull to return to her the items it removed from the passenger compartment.

62. Plaintiff paid Pitbull the $95 in cash it had demanded.

63. The $95 was a fee charged to obtain the release of personal property.

64. The $95 was not part of CPSI's reasonable expenses of storing Plaintiff's personal property in the vehicle at the time it was repossessed.

65. The $95 fee charged to Plaintiff for the release or her personal property was not a storage fee. CSPI did not pay Pitbull a fee for the storage of personal property found in vehicles repossessed from New Jersey consumers when the consumer did not collect such property.

66. Pitbull provided Plaintiff with a "Receipt for Redeeming Personal Property" and an

"Order to Repossess" which are attached as **Exhibits C and D**.

67. The Order to Repossess states that the Nissan was recovered from Plaintiff's address in Raritan, New Jersey and transported to Pitbull's 48 Lakeside Boulevard, Hopatcong, New Jersey address on June 22, 2016.

68. The Order to Repossess also states that Pitbull could not access the Nissan's trunk.

69. The Receipt for Redeeming Personal Property states that the "Lien Holder" was "Consumer Portfolio Services".

70. The Receipt for Redeeming Personal Property indicates that Plaintiff was not provided any property that had been inside the Nissan's trunk at the time of repossession because Pitbull had "no trunk access".

71. The Receipt for Redeeming Personal Property indicates that Plaintiff paid Pitbull $95 in cash which was identified both as a "Storage Per Day" fee and a "Handling Fee".

72. The Order to Repossess identifies CPSI as the "Lien Holder".

73. The Order to Repossess states that the Nissan was recovered from an address on Harding Court in Raritan, New Jersey on June 22, 2016 and was being stored at Pitbull's lot located at 48 Lakeside Boulevard, Hopatcong, New Jersey.

74. The Order to Repossess states that the trunk of the Nissan could not be accessed.

75. CPSI, through its agents, charged Plaintiff and others similarly situated fees for the release of personal property in repossessed vehicles that were not part of CPSI's reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral vehicles.

76. On June 24, 2016, CPSI sent Plaintiff a "Notice of Our Plan to Sell Vehicle". A copy of the CPSI Repossession Notice" is attached as **Exhibit E**.

77. The CPSI Repossession Notice stated that CPSI intended to sell Plaintiff's vehicle

sometime after July 18, 2016 and that she "could get the vehicle back at any time before we sell it by paying us the full amount you owe (not just the past due payments)[.]

78. The CPSI Repossession Notice also states: "If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-342-9252 or write us at...and request a written explanation".

79. On July 28, 2016 Plaintiff sent a letter to CPSI regarding the property in her trunk at the time of repossession.  A copy of Plaintiff's "July 28 Letter" is attached as **Exhibit F**.

80. In the July 28, 2016 Letter, Plaintiff informed CPSI that Pitbull had told her that it had not removed her property that was in the trunk at the time Nissan was repossessed and that the vehicle had been transported to Arkansas.  Plaintiff asked CPSI how she could retrieve the property that was in the Nissan's trunk.

81. CPSI did not respond to Plaintiff's July 28, 2016 Letter.

82. Following CPSI's repossession of the Nissan, a Notice of Seizure was not filed with the New Jersey Motor Vehicle Commission regarding the repossession of the Nissan.

83. Following CPSI's repossession of the Nissan, CPSI did not file any documents with the New Jersey Motor Vehicle Commission regarding the repossession of or title for the Nissan.

84. After repossessing Plaintiff's Nissan, CPSI or its agents initiated a process to obtain title to the Nissan.

85. During the period from June 22, 2016 to August 15, 2016, CPSI or its agents submitted documents to the Arkansas Department of Finance and Administration related to the Nissan.

86. During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted a "State of Arkansas Vehicle Bill of Sale/Odometer Disclosure Statement" ("CPSI

Odometer Statement") to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit G**.

87.  The CPSI Odometer Statement identifies:

   a)  the name of the "Dealer/Seller" of the Nissan as CPSI;

   b)  the name of the "Buyer" of the Nissan as CPSI; and

   c)  the "Purchase Date" as July 20, 2016.

88.  The CPSI Odometer Statement included an "Odometer Disclosure" whereby CPSI stated that the actual mileage reading on the Nissan's odometer was 60,287.

89.   The CPSI Odometer Statement was signed by Desha Beavers.

90.  Ms. Beavers signed the CPSI Odometer Statement twice, once as "Seller" of the Nissan and once as "Buyer" of the Nissan.

91.  During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted a "Vehicle Registration Application" to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit H**.

92.  The Vehicle Registration Application indicated that CPSI was seeking a "repo title".

93.  The Vehicle Registration Application identified CPSI as the "Owner" of the Nissan.

94.  The Vehicle Registration Application identified the "Arkansas Address" of CPSI as 8700 Highway 70, North Little Rock, Arkansas.

95.  The Vehicle Registration Application was signed by Desha Beavers as "Owner" of the Nissan.

96.  During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted an "Application for Title" to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit I**.

97.  The Application for Title identified CPSI as the owner of the Nissan and also as the entity

to which the Nissan's title would be assigned.

98.   The Application for Title identified the address of CPSI as 8700 Highway 70, North Little Rock, Arkansas.

99.   The Affidavit for Repossession Title identifies CPSI as the "Repossessing Lienholder" with an address of PO Box 57071, Irvine, California.

100.   On the Affidavit for Repossession Title, Minh Nguyen is identified as the person authorized to sign for CPSI.

101.   The Affidavit for Repossession Title includes the text:

> "I swear and affirm that the lienholder listed herein has a written agreement with the auction listed herein to sell the lienholder's repossessed vehicles, and the vehicle described above will be offered for sale at such Arkansas auction.

102.   Beneath this text is the printed name and signature of Minh Nguyen, which is dated July 20, 2016.

103.   The Affidavit for Repossession Title identifies the Arkansas auto auction where the Nissan would be sold as ADESA Little Rock with an address of 8700 Highway 70, North Little Rock, Arkansas.

104.   During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted an "Affidavit of Repossession of Motor Vehicle" ("Affidavit of Repossession") to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit J**.

105.   The Affidavit of Repossession includes the following text:

> "I, We, do hereby solemnly swear to affirm that the following described vehicle was repossessed from Deborah C Pierre-Charles pursuant to the terms of a Conditional Sales Contract, Chattel Mortgage or Security Agreement, a copy of which is attached."

Underneath the quoted statement appears a description of the Nissan.

106.  The Affidavit of Repossession was signed by Minh Nguyen on behalf of CPSI and dated July 20, 2016.

107.  During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted a letter dated July 20, 2016 ("CPSI July 20 Letter") to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit K**.

108.  The CPSI July 20 Letter contains the following text: "Consumer Portfolio Services, Inc. (CPS Inc.) has consigned the above mentioned vehicle to be resold at Adesa Little Rock."

109.  The CPSI July 20 Letter was signed by Minh Nguyen.

110.  On or about July 27, 2016, the Department of Finance and Administration issued title identifying CPSI as the owner of the Nissan.

111.  During the period between June 22, 2016 and July 28, 2016, CPSI or its agents submitted an "Affidavit for Issuance of a Repossession Title for an Out of State Vehicle to be Offered for Sale at an Arkansas Auto Auction" ("Affidavit for Issuance of a Repossession Title") to the Arkansas Department of Finance and Administration, a copy of which is attached as **Exhibit L**.

112.  The Affidavit for Issuance of a Repossession Title includes the following text which states that an Arkansas repossession title may not be issued for a motor vehicle that was last registered in a state other than Arkansas if the last title reflecting the lienholder and debtor is not available, unless the vehicle is to be offered for sale at an Arkansas auto auction. Further, the document also states that the sale of such vehicles must be in accordance with a written agreement between the lienholder and the Arkansas auto auction. Under "Repossessing Lienholder Information," Defendant lists itself as the lienholder on the vehicle. However, CPSI did not, at any time, possess a lien on the vehicle. This document is dated July 20, 2016.

113. On July 28, 2016, Plaintiff sent a letter to CPSI.  A copy of the July 28, 2016 Letter to CPSI is attached as **Exhibit M**.

114. The July 28, 2016 Letter to CPSI asked how she could obtain her personal property that had been located in the trunk of her vehicle when it was repossessed by CPSI.

115. CPSI did not respond to Plaintiff's letter.

116. CPSI sold Plaintiff's Nissan at the ADESA Little Rock auto auction on or before August 5, 2016.

117. On August 5, 2016, CPSI credited $7,934.75 to Plaintiff's account, leaving a principal balance of $6,614.55.

118. On August 8, 2016 Plaintiff logged on to her CPSI account on the CPSI website.  Her account included a "Payoff Quote" page.  A copy of the "August 8 Payoff Quote" is attached as **Exhibit N**.

119. The August 8 Payoff Quote included the following text:

"Your payoff amount is $8,379.24 and is valid through August 15, 2016 providing no further activity appears on your account.

After August 15, 2016, the payoff amount will increase each day by 3.67."

120. On or about August 9, 2016, CPSI sent Plaintiff an "Explanation of Calculation or Surplus or Deficiency" ("Deficiency Explanation"), a copy of which is attached as **Exhibit O**.

121. The Deficiency Explanation identifies the following amounts:

a) $15,910.96 as the "Amount You Owe Us (including interest, other fees, and ay other amounts added to your debt, as allowed by law);

b) $8,400 as the "Sale Price of Collateral";

c) $7,510.96 as the "Unpaid Amount";

d) $835.25 as the "Total Expenses"; and

e)  $8,346.21 as the "Amount of Deficiency. This is the amount you owe us".

122.  The "Total Expenses" fee included expenses for the Nissan to be transported to Arkansas.

123.  The "Total Expenses" fee included expenses for CPSI to obtain an Arkansas title for the Nissan.

124.  ADESA has an auto auction located in Manville, New Jersey.

125.  The ADESA auction in Little Rock, Arkansas does not obtain higher sale prices than the auto auction in Manville, New Jersey.

126.  New Jersey is a higher-density automobile dealer region than Little Rock, Arkansas.

127.  The Little Rock, Arkansas auto auction where Defendant sold the Nissan is more than 1,100 miles from New Jersey.

128.  Defendant's sale of the Nissan at the ADESA Little Rock, Arkansas auction resulted in a lower sale price for the vehicle than if it had been sold at the ADESA Manville, New Jersey auction.

129.  The cost of transporting the Nissan to the ADESA Little Rock, Arkansas auction was significantly higher than transporting the vehicle to the ADESA Manville, New Jersey auction.

130.  Defendant's sale of the Nissan in Little Rock, Arkansas resulted in both higher expenses and a lower sale price.

131.  Had Defendant sold the Nissan at the ADESA Manville, New Jersey auto auction, the "Total Expenses" would have been less, as it would not have been necessary to transport the vehicle more than 1,000 miles.

132.  Had Plaintiff wished to redeem the Nissan prior to sale, it would have been necessary for her to travel approximately 1,200 miles to take possession of the vehicle and then drive the vehicle back to New Jersey or, alternatively, to arrange for the vehicle to be

transported back to New Jersey.

133.  Defendant's sale of the Nissan more than 500 miles from New Jersey was not designed to obtain the best possible price under the circumstances.

134.  CPSI failed to file an accurate "Notice of Seizure of Motor Vehicle" with the New Jersey Motor Vehicle Service after repossessing the vehicles of Plaintiff and those similarly situated as required by New Jersey law.

135.  CPSI failed filed an "Application for Repossession Certificate of Ownership and Certification of Compliance with Article 9 of the New Jersey Uniform Commercial Code" with the New Jersey Motor Vehicle Service as required by New Jersey law.

136.  The Deficiency Explanation includes a statement that if Plaintiff had "any questions regarding this explanation", she could call or write to CPSI.

137.  On August 15, 2016, Plaintiff obtained via the CPSI website a copy of her CPSI "Payment History", a copy of which is attached as **Exhibit P**.

138.  The August 15, 2016 Payment History indicates that on August 5, 2016 a "Total Paid" amount of $7,934 was credited to her account as payment on "Principal".  The $7,934.75 was described as "Proceeds Payment", resulting in a "Principal Balance" of $6,614.55.

139.  On August 16, 2016, Plaintiff sent a letter to CPSI, a copy of her "August 16 Letter" is attached as **Exhibit Q**.

140.  In her August 16 Letter, Plaintiff requested an itemization of the $835.25 amount identified as "Total Expenses" on the Explanation and reminded CPSI that she had not yet received her personal property that was in her vehicle's trunk at the time of repossession.

141.  Plaintiff sent her August 16 Letter via e-mail, regular U.S. mail, and certified U.S. mail.

142.  Plaintiff received an e-mail message indicating that CPSI read her e-mail on August 16,

2016, the same day that she sent it.

143.  Defendant did not respond to Plaintiff's August 16 Letter.

144.  CPSI did not take reasonable efforts to return to Plaintiff the property in her vehicle's trunk when the vehicle was repossessed.

145.  Plaintiff never received the property in her trunk at the time of repossession.

**Plaintiff Seeks Certification of a Class**

146.  Plaintiff seeks certification of a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules on behalf of herself and others similarly situated.

147.  Plaintiff seeks to certify a class initially defined as:

Any consumer obligor whose motor vehicle was repossessed by CPSI from a location in New Jersey at any time on or after the day four years prior to the filing of this Complaint and where:

A) the collateral vehicle was sold at a location more than 500 miles from the State of New Jersey in a sale that resulted in a deficiency and not a surplus; or

B) the obligor paid a fee to CPSI's agents for the release of property inside the vehicle at the time of repossession.

148.  The Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.  The precise size of the proposed class and the identity of its members will be readily ascertainable from the records of CPSI and its agents.

149.  There are questions of law and fact common to the members of the Class.

150.  These common questions include but are not limited to:

a)  Whether requiring a consumer obligor to pay a fee as a condition for the release of personal property contained in a collateral vehicle when it was repossessed violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

b)  Whether requiring a consumer obligor to pay a fee for the release of personal property contained in a collateral vehicle when it was repossessed when the underlying retail installment contract did not permit such a fee to be charged constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

c) Whether the fees CPSI required to be paid as a condition of obtaining personal property from a repossessed vehicle was part of CPSI's reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral vehicles constitutes a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

d) Whether transporting a collateral vehicle repossessed from a New Jersey consumer to an auction more than 500 miles from the State of New Jersey resulted in higher transportation costs and/or lower sale prices.

e) Whether the transportation fees charged to Plaintiff and others similarly situated for transporting a collateral vehicle repossessed from a New Jersey consumer to an auction more than 500 miles from the State of New Jersey constitutes an ascertainable loss under the CFA.

f) Whether the fee for obtaining an out of state title charged to Plaintiff and others related to the sale of a collateral vehicle repossessed from a New Jersey consumer to an auction more than 500 miles from the State of New Jersey constitutes an ascertainable loss under the CFA.

g) Whether the diminished sale price resulting from selling the collateral vehicles of Plaintiff and other New Jersey consumers at an auction more than 500 miles from the State of New Jersey constitutes an ascertainable loss under the CFA.

h) Whether transporting a collateral vehicle repossessed from a New Jersey consumer to an auction more than 500 miles from the State of New Jersey is commercially reasonable in every respect under the New Jersey Uniform Commercial Code ("UCC") N.J.S.A. § 12A:9-102 *et seq.*

151. Proof of a common set of facts will establish liability and the right of each Class member to recover.

152. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual Class members.

153. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

154. While the economic damages suffered by the individual Class members are significant, the amount may be modest compared to the expense and burden of individual litigation.

155. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

156. The claims and defenses of Plaintiff are typical of the claims and defenses of the members of the Class, since the claims and defenses arise out of common practices involving the same or similar forms of documents.

157. Plaintiff does not have interests antagonistic to those of the Class.

158. The Class, of which Plaintiff is a member, is ascertainable.

159. Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer class actions.

160. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for CPSI in this action.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

161. The prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

162. CPSI has acted or refused to act on grounds generally applicable to Plaintiff and those similarly situated, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

163. A class action will cause an orderly and expeditious administration of the Class and will foster economies of time, effort and expense.

164. Plaintiff does not anticipate any difficulty in the management of this litigation.

**Count One on Behalf of Parts A and B of the Class**
**Violations of the New Jersey Consumer Fraud Act**

165. Plaintiff, on behalf of herself and others similarly situated in parts A and B of the Class

definition set forth above, repeats and realleges all prior allegations as if set forth at length herein.

166. CPSI has engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in its interactions with Plaintiff and those similarly situated in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et. seq.*).

167. CPSI's practice of selling collateral vehicles repossessed by CPSI from a location in New Jersey at an auction located more than 500 miles from the State of New Jersey constitutes an unconscionable commercial practice, deception, fraud, false promise, false pretense, and/or misrepresentation. Plaintiff and those similarly situated suffered an ascertainable loss resulting from this practice that included the expenses to transport the vehicle, the expense to obtain an out of state title, and the diminished sale price.

168. CPSI did not have a lien on the personal property contained within the vehicles of Plaintiff and those similarly situated. As such, CPSI had no basis to condition the release of such property on the payment of a processing fee.

169. The retail installment contracts of Plaintiff and others similarly situated did not permit CPSI to charge a fee for the release of personal property contained in their repossessed vehicles.

170. The fees that CPSI charged to Plaintiff and others similarly situated for the release of personal property contained in their repossessed vehicles were not part of CPSI's reasonable expenses for storing that property.

171. By charging a fee for the release of personal property as a condition of releasing personal property that was not permitted by the retail installment contract, and that was not part of CPSI's reasonable expenses for storing the property, CPSI engaged in unconscionable

commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations. Plaintiff and those similarly situated suffered an ascertainable loss resulting from this practice includes the amount paid to obtain the release for the personal property.

<u>**Count Two on Behalf of Only Part A of the Class**</u>
**Violations of the New Jersey Uniform Commercial Code**

172. Plaintiff, on behalf of herself and other similarly situated of only those who meet only subpart A of the Class definition as set forth above, repeats and realleges all prior allegations as if set forth at length here.

173. Plaintiff and those similarly situated are consumer obligors under N.J.S.A. 12A:9-102(a)(25).

174. All aspects of CPSI's disposition of the collateral of Plaintiff and others similarly situated were not commercially reasonable, in violation of the NJUCC.

175. Among other reasons, CPSI's sale of the vehicles or Plaintiff and those similarly situated was commercially unreasonable in that:

A. CPSI transported repossessed vehicles more than 500 miles from the State of New Jersey to an area with a market for used vehicles that would yield lower prices than if the vehicles were sold in or near New Jersey;

B. CPSI failed to conduct an investigation, study, survey or other inquiry to determine what type of sale would likely generate the highest price for collateral vehicles;

C. CPSI and/or its agents violated state laws in securing new titles for its repossessed vehicles, including but not limited to filing false certifications;

D. CPSI and/or its agents failed to comply with New Jersey laws and regulations related to the seizure and re-sale of repossessed motor vehicles;

E. CPSI charged Plaintiff and other similarly situated fees in excess of CPSI's reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of their collateral vehicles;

F. CPSI obtained sales prices for the disposition of collateral vehicles that were unreasonably low;

G.   CPSI charged Plaintiff and others similarly situated the cost of transporting the vehicles to such a far away location when such transport was unlikely to obtain a sale price greater than what would have been obtained in New Jersey;

H.   CPSI charged Plaintiff and others similarly situated fees for obtaining out of state titles when selling the vehicles out of state were unlikely to obtain a sale price greater than what would have been obtained in New Jersey;

I.   CPSI failed to adequately supervise the process by which repossessed vehicles are repossessed and sold;

J.   CPSI failed to adequately enforce its contracts related to the repossession and disposition of collateral vehicles; and

K.   CPSI failed to follow its stated policies related to the repossession and sale of repossessed vehicles.

176.   The repossessed collateral vehicles of Plaintiff and those similarly situated were transported to a location that was unreasonably far from each class member's respective residence.

177.   CSPI sold the vehicles of Plaintiff and those similarly situated significantly below the range of prices that lawful disposition would have brought.

178.   CPSI violated N.J.S.A. 12A:9-610 by failing to dispose of the collateral vehicles of Plaintiff and others similarly situated in a manner that was commercially reasonable in every respect.

179.   By transporting these vehicles more than 500 miles from the State of New Jersey effectively undermined the consumer's right to redeem their vehicle as set forth in N.J.S.A. 12A:9- 614.

180.   CPSI violated N.J.S.A. 12A:9-615 by charging more than the reasonable expenses of retaking, holding, preparing for disposition, processing, and disposing of the collateral vehicles when calculating the alleged deficiency.

181.   CPSI violated N.J.S.A. 12A:9-627 by failing to dispose of the collateral vehicles of Plaintiff and others similarly situated in the usual manner on a recognized market; at the

price current in a recognized market at the time of the disposition; or in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

182. CPSI breached its duty of "Good Faith" as required by the UCC.

183. CPSI breached its duty of "good faith" which includes both "honesty in fact" and "the observance of reasonable commercial standards of fair dealing" required by N.J.S.A. 12A:9-102(a)(43).

184. CPSI violated the NJUCC rights of Plaintiff and those similarly situated.

185. By refusing to allow Plaintiff and those similarly to take possession of their collateral vehicles until they paid repossession fees, vehicle storage fees, or a processing fees for the release of their repossessed vehicles, CPSI violated N.J.S.A. 12A:9-623.

### <u>Count Three on Behalf of Plaintiff as an Individual</u>
### <u>Violations of the CFA</u>

186. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

187. Upon repossessing Plaintiff's vehicle, Defendant took possession of Plaintiff's personal property located in the vehicle's trunk that was unsecured by any credit obligation.

188. Plaintiff contacted Defendant and its agents to obtain possession of the property in her vehicle's trunk at the time of repossession.

189. Defendant failed to obtain Plaintiff's personal property from the trunk of her repossessed vehicle.

190. Defendant failed to take reasonable efforts to arrange for the return of the personal property from the trunk of her repossessed vehicle.

191. The property in Plaintiff's trunk at the time of repossession was never returned to her.

192. CPSI's failure to allow her to obtain possession of the personal property in her vehicle  at

the time of repossession and its failure to take reasonable efforts to arrange for the return of that property constitutes an unconscionable commercial practice, deception, fraud, false promise, false pretense, and/or misrepresentation in its interactions with Plaintiff in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et. seq*.).

### Count Four on Behalf of Plaintiff as an Individual
**Conversion Property Taken Without Authorization/Trover/Conversion**

193. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

194. Defendant took possession of Plaintiff's personal property that was unsecured by any credit obligation.

195. Defendant deprived Plaintiff of her right to possess the property stored in her vehicle's trunk at the time of repossession.

196. Defendant transported Plaintiff's vehicle to Arkansas with her property in the trunk.

197. Defendant failed to obtain Plaintiff's property from the trunk of her vehicle, despite Plaintiff's request to obtain the return of that property.

198.  Defendant is liable to Plaintiff, who was entitled to possess such property.

199. Defendant is liable for damages, including punitive damages, proximately caused by this wrongful conduct.

### Count Five on Behalf of Plaintiff as an Individual
**Negligence**

200. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

201. Defendant acquired unsecured property personal property of Plaintiff.

202. Defendant had the duties of a constructive bailee and owed Plaintiff a duty to exercise reasonable care in protecting her property.

203. Defendant breached its duty to exercise reasonable care with regard to safeguarding her personal property in the trunk at the time of repossession.

204.  Defendant is liable for damages proximately caused by this wrongful conduct.

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully prays

for relief as follows:

A.  For an order certifying this matter as a class action providing notice to the members of the Class, and appointing Plaintiff as the class representative and her attorneys as Class Counsel;

B.  For a declaratory judgment that Defendant violated the Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*., and the New Jersey Uniform Commercial Code, N.J.S.A. 12A: 9-102 *et seq*.;

C.  For injunctive relief prohibiting Defendant from carrying out future violations of the NJUCC and the CFA similar to the violations alleged herein;

D.  For an accounting of all amounts paid by Plaintiff and those similarly situated for the release of personal property and for all amounts paid related to the disposition of their collateral vehicles;

E.  For actual damages;

F.  For compensatory damages;

G.  For treble damages pursuant to N.J.S.A.  56:8-19;

H.  For maximum statutory damages pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et. seq*., and the New Jersey Uniform Commercial Code, N.J.S.A. 12A:9 102 *et seq*., and all other applicable statutes;

I.  For reasonable attorney's fees and costs of suit in connection with this action pursuant to N.J.S.A. 56:8-19;

J.  For nominal damages;

K.  For consequential damages;

L.  For pre-judgment and post-judgment interest; and

M.  For such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues subject to trial.

## **DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Andrew R. Wolf, Esq. is hereby designated as trial counsel for the Plaintiff in the above matter.

## **CERTIFICATION**

Pursuant to R. 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

Dated:  September 20, 2017

_Bharati S. Patel_

---

Bharati Sharma Patel, Esq.
The Wolf Law firm, LLC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ  08902
Tel. 732-545-7900
Fax: 732-545-1030
*Attorneys for Plaintiff and others similarly situated.*

# EXHIBIT A

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

**RETAIL INSTALLMENT SALE CONTRACT**
**SIMPLE FINANCE CHARGE**

| Buyer Name and Address (Including County and Zip Code) | Dealer Number | Contract Number | Seller-Creditor (Name and Address) |
|---|---|---|---|
| DEROSAN C PIERRE-CHARLES <span style="color:red">Redacted</span> | Co-Buyer Name and Address (Including County and Zip Code) | | MJ's Auto Sales 3913 U.S. 1 South North Brunswick NJ 08902 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| New/Used Used | 2013 | Altima Nissan | 1N4AL3AP5DN540953 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural ☐ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2,000.00 |
|---|---|---|---|---|
| 20.25 % | $ 8,802.73 | $ 14,720.85 | $ 23,523.60 | $ 25,523.60 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $392.06 | Monthly beginning 01/18/16 |

Or As Follows:

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ 10,000 , or less, the charge for each will be $ 10 .

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

See this contract for more information

including about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

### ITEMIZATION OF AMOUNT FINANCED

| | | | | | |
|---|---|---|---|---|---|
| 1 Cash Price (including $ _____ sales tax) | | | | | $ 16,183.85 (1) |
| 2 Total Downpayment = | | | | | |
| Trade-in | 2001 Toyota Corolla | | | | |
| | (Year) | (Make) | (Model) | | |
| Gross Trade-in Allowance | | | | $ 2,000.00 | |
| Less Pay Off Made By Seller | | | | $ N/A | |
| Equals Net Trade In | | | | $ 2,000.00 | |
| + Cash | | | | $ N/A | |
| + Other | | | | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4J below) | | | | $ 2,000.00 (2) | |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | | | | $ 14,183.85 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | | | | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | | | | | |
| Life | | | | $ N/A | |
| Disability | | | | $ N/A | |
| B Other Optional Insurance Paid to Insurance Company or Companies | | | | $ N/A | |
| C Official Fees Paid to Government Agencies | | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| D Optional Gap Contract | | | | $ N/A | |
| E Background Title Fee | | | | $ N/A | |
| F Vehicle Tire Fee | | | | $ N/A | |
| G Government Taxes Not Included In Cash Price | | | | $ N/A | |
| H Government License and/or Registration Fees | | | | $ 149.00 | |
| | | | | $ N/A | |
| I Government Certificate of Title Fees | | | | $ N/A | |
| J Other Charges (Seller must identify who is paid and describe purpose) | | | | | |
| to | for Price Costs or Loans Before | | | $ 0.00 | |
| MJ's Auto Sales | for Processing Fee | | | $ 389.00 | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| to | for | | | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | | | $ 538.00 (4) | |
| 5 Amount Financed (3 + 4) | | | | $ 14,720.85 (5) | |

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on _____, Year _____ SELLER'S INITIALS _____ on or before

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural uses.

a payment is not received in full within _____ of the _____ and a late charge of _____ not checked, the late charge disclosure in the Federal Truth-in-Lending Disclosures will apply.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation agreement) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos. _____ Name of Gap Contract

☐ I want to buy a gap contract.

### Insurance Notice

Insurance. You may buy the physical damage insurance this contract requires (See back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. THIS DOES NOT INCLUDE INSURANCE ON YOUR VEHICLE FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below.
**Optional Credit Insurance**
☐ Credit Life  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium:
Credit Life $ _____ N/A
Credit Disability $ _____ N/A
Insurance Company Name _____
Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ _____ Type of Insurance _____ Term
Premium $ _____ N/A
Insurance Company Name _____
Home Office Address _____

☐ _____ Type of Insurance _____ Term
Premium $ _____
Insurance Company Name _____
Home Office Address _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ 12/19/15
Buyer Signature    Date

X _____ 12/19/15
Co-Buyer Signature    Date

Returned Check Charge: You agree to pay a charge of the amount allowed by law if any check you give to us is dishonored.

### NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $392.00 | Monthly beginning 01/18/16 |

**Or As Follows:**

Late Charge. If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ __10,000__ or less, the charge for each late payment will be $ __10__.

Prepayment. If you pay off your debt early, you will not have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| 1 Cash Price (including tax) | | $16,182.65 |
| 2 Total Downpayment = | | |
|  Trade-in 2001 Toyota Corolla | | |
|  Gross Trade-in Allowance | $ 2,000.00 | |
|  Less Pay Off Made By Seller | $ N/A | |
|  Equals Net Trade in | $ 2,000.00 | |
|  + Cash | $ N/A | |
|  + Other | $ N/A | |
|  (If total downpayment is negative, enter "0" and see 4J below) | $ 2,000.00 |  |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $14,182.65 |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
|  (Seller may keep part of these amounts:) | | |
|  A Cost of Optional Credit Insurance Paid to Insurance | | |
|   Company or Companies | | |
|    Life | $ N/A | |
|    Disability | $ N/A | $ N/A |
|  B Other Optional Insurance Paid to Insurance Company or Companies | $ N/A | |
|  C Official Fees Paid to Government Agencies | $ N/A | |
|    to | $ N/A | |
|    to | $ N/A | |
|    to | $ N/A | |
|  D Optional Gap Contract | $ N/A | |
|  E Supplemental Title Fee | $ N/A | |
|  F Vehicle Tire Fee | $ N/A | |
|  G Government Taxes Not Included In Cash Price | $ N/A | |
|  H Government License and/or Registration Fees | $ 149.00 | |
|  I Government Certificate of Title Fees | $ N/A | |
|  J Other Charges (Seller must identify who is paid and | | |
|   describe purpose) | | |
|    to | $ 0.00 | |
|    to MJ's Auto Sales for Processing Fee | $ 389.00 | |
|    to | $ N/A | |
|    to | $ N/A | |
|    to | $ N/A | |
|    to | $ N/A | |
|    to | $ N/A | |
|  Total Other Charges and Amounts Paid to Others on Your Behalf | $ 538.00 | |
| 5 Amount Financed (3 + 4) | | $14,720.65 |

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
_____ , Year _____. SELLER'S INITIALS _____

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural uses.
If a payment is not received in full within _____ days after it is due, you will pay a late charge
of $ _____ or _____ % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-in-Lending Disclosures" still applies.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos. _____ Name of Gap Contract _____

I want to buy a gap contract.

Buyer Signs X _____

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.    Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO RETAIL BUYER**

Do not sign this contract in blank.
You are entitled to a copy of the contract at the time you sign.
Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs _____ Date 12/19/15    Co-buyer Signs X _____ Date 12/19/15

Co-Buyer and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title for the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here _____ Date 12/19/15    Address _____

Seller Signs _____    By X _____ Title _____

Seller assigns its interest in this contract to CONSUMER PORTFOLIO SERVICES, INC. (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☐ Assigned with limited recourse

By _____ Title _____

LAW FORM NO. 553-NJ
ORIGINAL LIENHOLDER

---

**PUBLIC WARNING**

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the box/boxes you want and sign below.

**Optional Credit Insurance**
☐ Credit Life   ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ __N/A__
Credit Disability $ __N/A__
Insurance Company Name _____

Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the amount financed if you die. This insurance pays only the amount you owed over if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under the contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. This policies or certificates issued by the named insurance company may contain limitations and exclusions. Credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

| | |
|---|---|
| Type of Insurance | Term |
| Premium $ __N/A__ | |
| Insurance Company Name _____ | |
| Home Office Address _____ | |

| | |
|---|---|
| Type of Insurance | Term |
| Premium $ _____ | |
| Insurance Company Name _____ | |
| Home Office Address _____ | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X _____ 12/19/15
Buyer Signature      Date

X _____ 12/19/15
Co-Buyer Signature      Date

Returned Check Charge: You agree to pay a charge
of $ __20__ if any check you give us is
dishonored and the law allows it.

**OTHER IMPORTANT AGREEMENTS**

### 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must name us or our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
**What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

---

b. If you pay late, we may also take the steps described below.
You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee you will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peaceably and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use that device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back.** If we take it, if we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

### 4. WARRANTIES SELLER DISCLAIMS
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

### 5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

### 6. Servicing and Collection Contacts.
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

### 7. Applicable Law
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

out penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a.** If the vehicle is damaged, destroyed, or missing.
You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.** Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.** Security Interest.
You give us a security interest in:
• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.** Insurance you must have on the vehicle.
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.** What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund on insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.** How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f.** We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. Applicable Law.**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-NJ-914

# EXHIBIT B

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others
similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

**CPS**
Consumer Portfolio Services, Inc.
P.O. Box 57071, Irvine, CA 92619

> We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.
>
> *See reverse side for an important Privacy Notice.*

December 23, 2015

DEBORAH C PIERRE-CHARLES
Redacted

| | | | |
|---|---|---|---|
| **Re:** | Automobile Installment Sales Contract | **Amount Financed:** | $14,720.85 |
| **Account:** | 0016009201 | **Vehicle:** | 2013 NISSAN ALTIMA |
| **Contract Date:** | December 19, 2015 | **Monthly Payment:** | $392.06 |
| | | **First Payment Date:** | January 18, 2016 |

Dear Deborah C Pierre-Charles,

Congratulations on the purchase of your new vehicle. Our company, Consumer Portfolio Services, Inc. has purchased the Motor Vehicle Contract and Security Agreement executed by you and we welcome you as our customer.

Insurance - Under the terms of your contract, you are required to maintain comprehensive and collision insurance on the vehicle securing the contract. Please instruct your insurance agent to name Consumer Portfolio Services, Inc. as the loss payee and mail proof of insurance to:

Consumer Portfolio Services, Inc.
P.O. Box 57071
Irvine, CA 92619-3070

Payments - You will receive a monthly statement that includes a payment coupon for remitting your monthly payment. When remitting by mail, please use the envelope that comes with your monthly coupon and mail only to the address shown on the coupon. Please do not send other correspondence to the address shown on the coupon. **The coupon for your first payment is at the bottom of this page.** You may also make your payment online from your checking or savings account, by phone, or with your credit or debit card. **Additional fees may apply.** For more information, visit our website at www.consumerportfolio.com.

Credit Reporting Disputes - If you believe we reported incorrect or incomplete information about you, write us at: CPS, Inc., 57071, Irvine, CA 92619-7071, Atten: Credit Report Response Team. Please tell us why you believe it is incorrect or incomplete and provide any evidence you may have.

Complaints - If you have a complaint other than a Credit Reporting Dispute, please contact us at www.cpsresolutioncenter.com.

If you have any questions, please contact our Customer Service Department at 888-469-4520. *ext 15609*

This letter is an attempt to collect a debt. Any information obtained will be used for that purpose.

---

For Proper Credit Please Return this Coupon in the Enclosed Envelope

**PAYMENT COUPON**

**CPS**
Consumer Portfolio Services, Inc.
P.O. Box 57071, Irvine, CA 92619

A $0.00 Fee will be assessed on all Returned Checks

500001332224800

| | |
|---|---|
| ACCOUNT NO. | 0016009201 |
| NEXT PAYMENT AMOUNT | $392.06 |
| AMOUNT PAST DUE | |
| LATE/SERVICE FEES | |
| TOTAL DUE | $392.06 |

PLEASE MAKE CHECK PAYMENT TO:
CPS, Inc.

DEBORAH C PIERRE-CHARLES
Redacted

CPS, Inc.
P.O. BOX 98705
PHOENIX AZ 85038-0705

00160092011 021014 500001332224800 4218 000392068

# EXHIBIT C

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

# Receipt for Redeeming Personal Property

**Pitbull Recovery Llc**

P.O. Box 371

Hopatcong, NJ 07843

**Phone:** 8628039900 **Fax:** 8622442040

07/22/2016 @ 08:27:20

**Case #:** 2045068637

**Reference #:** 3899

**Acct #:** 513305

**Debtor**

Deborah Pierre-Charles

Redacted

**Lien Holder**

Consumer Portfolio Services

**Vehicle**

2013 Nissan Altima

**VIN:** 1N4AL3AP5DN540953

I , Deborah  Pierre-Charles  , the owner of the above referenced vehicle or the person authorized by the owner of the above referenced vehicle, hereby acknowledge receipt of the above mentioned personal effects.

Property Notes:  all contents of the unit at the time of repossession, except trunk items, we had no trunk access

| | |
|---|---|
| **Storage Per Day:** | $95 |
| **number of Days Stored:** | |
| **Handling Fee:** | $95 |
| **TOTAL DUE:** | $95 |

_____

**DATE**

**R/O Notes:** _____

CONTACT #_____

# EXHIBIT D

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

# Order To Repossess

| | | | |
|---|---|---|---|
| Date Assigned: **06/22/2016** Acct #: **513305** | | Case#: **2045068637** | Reference#: **3899** |

**Client: American Lending Solution**

8927 JM Keynes Dr #360
Charlotte, NC 28262
**Phone:**  704-935-5700 **Fax:** 704-935-5702
**By** : Jeremiah W / **EXT:**
**Lien Holder:** Consumer Portfolio Services

**To: Pitbull Recovery Llc**

P.O. Box 371
Hopatcong, NJ 07843
**Phone:** 8628039900 **Fax:** 8622442040

**Adjusters :** Danny N

**Debtor:** Deborah C Pierre-Charles
**SSN:** redacted  **DOB:** redacted

**Cosigner** :
**SSN:** redacted  **DOB:** redacted

Borrower - Home
Redacted

## Additional Information:

6/20 Rec'd release from client to release unit to PRA, bill client for any fees due. Form to be signed. CND

NK
******CAN NOT ACCESS TRUNK*******

Body Style: 4dr Sdn I4 2.5
Front Wheel Drive
Engine: 2.5 Gasoline Fuel 4 Cylinder Engine

6/22/16 @ 11:57pm unit was recovered from 1 Redacted                                     ) & is being stored @ Pitbull Recovery
48 Lakeside Blvd Hopatcong NJ 07843. CND

| | | | |
|---|---|---|---|
| Year: **2013** | Make: **Nissan** | Model: **Altima** | Color: **White** |
| Lic#: **NJTEMP** | St: **NJ** | VIN: **1N4AL3AP5DN540953** | |
| Dealer: | Key Codes: | | |

| Monthly Payments | Balance on Account | Amount Past Due | Delinquent Since |
|---|---|---|---|
| Date Rec'd : | Time :    :   AM / PM | PD: | I.D.#: |
| Recovered From: | | | |
| Adjuster: | Comm $: | | Repo Fee $: |
| Miles on Vehicle: | Tags: | | Other Charges $: |
| Major Damage: ( ) Personals: ( )<br>Driveable: ( ) | Locked: [Y] [N]  Keys: ( ) | | Bill to Customer $: |

# EXHIBIT E

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.



**Consumer Portfolio Services, Inc.**
**Asset Recovery Department**
P.O. Box 57071
Irvine, California 92619-7071

Date of Notice: 06/24/16

### NOTICE OF OUR PLAN TO SELL VEHICLE

**DEBORAH C PIERRE-CHARLES**

Redacted

**Subject: Installment Purchase of Vehicle under Contract dated 12/19/15.**
Account: 0016009201

We have your 2013 NISSAN ALTIMA, bearing the Vehicle Identification number 1N4AL3AP5DN540953, because
you broke promises in our agreement.

We will sell the 2013 NISSAN ALTIMA at a private sale sometime after 7/18/16.

The money that we get from the sale (after paying our costs) will reduce the amount you owe.  If we get less money
than you owe, you will still owe us the difference.  If we get more money than you owe, you will get the extra money,
unless we must pay it to someone else.

You can get the vehicle back at any time before we sell it by paying us the full amount you owe (not just the past due
payments), including our expenses.  To learn the exact amount you must pay, call us at 800-342-9252.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at
800-342-9252 or write us at Consumer Portfolio Services, Inc., Asset Recovery Department, P.O. Box 57071, Irvine,
California 92619-7071 and request a written explanation.

If you need more information about the sale call us at 800-342-9252 or write us at Consumer Portfolio Services, Inc.,
Asset Recovery Department, P.O. Box 57071, Irvine, California 92619-7071.

We are sending this notice to the following other people (if any listed below) who have an interest in the 2013
NISSAN ALTIMA or who owe money under your agreement:

As noted above, you have the right to redeem (purchase) the vehicle if you pay us the entire amount you owe (not just the past due payments), including our expenses. In addition, our policies generally allow you to reinstate the contract if you pay us all past due payments, plus our expenses. If you would like to get the vehicle back and continue making payments, you should call us at 800-342-9252 or write us at Consumer Portfolio Services, Inc., Asset Recovery Department, P.O. Box 57071, Irvine, California, 92619-7071.

Bankruptcy Notice: This notice is not an attempt to collect a debt from any bankruptcy petitioner. If you have filed a bankruptcy petition that covers the vehicle described above, then your personal liability to pay for the vehicle, if any, will be determined in the bankruptcy proceeding. This notice relates to our enforcement of our lien against the vehicle.

noit1_cps

# EXHIBIT F

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

Deborah C. Pierre-Charles
Redacted


July 28, 2016


CPSI
Auto Recovery Dept.
P.O. Box 57071
Irvine CA 92619-7071


Re:     Account # 0016009201;
        Property in 2013 Nissan Altima VIN: 1N4AL3AP5DN540953


To Whom It May Concern:


I am writing about the property that was in the trunk of my car when it was repossessed.

I contacted Pitbull Recovery LLC, which only gave me some of the property that was in the vehicle. Pitbull told me that they did not remove the property that was in the trunk and that my car is now in Arkansas.

Please tell me how I can get back the property that was in my car's trunk when it was repossessed.


Sincerely,


Deborah C. Pierre-Charles

# EXHIBIT G

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

## STATE OF ARKANSAS VEHICLE BILL OF SALE/ODOMETER DISCLOSURE STATEMENT

**Section 1 - Vehicle Identification Number (VIN)**

| 1N4AL3AP5DN540953 |
|---|

If buyer is a company rather than individuals, go directly to Section 3 - Company Name.

**Section 2 - Buyer Information**

| First Name | | Middle Initial | Last Name |
|---|---|---|---|
| Address | | | |
| City, State, Zip | | | |

☐ Check this box if there are multiple owners

**Section 3 - Company Information**

| Company Name |
|---|
| CONSUMER PORTFOLIO SERVICES |
| Company Address |
| City, State, Zip |

**Section 4 - Dealer/Seller Name and Address**

| Dealer/Seller Name |
|---|
| CONSUMER PORTFOLIO SERVICES |
| Address |
| City, State, Zip |

**Section 5 - Purchase Date**    7-20-16

**Section 6 - Description of Vehicle Purchased and Vehicle Trade-In**

| Vehicle Purchased | Make NISSAN | Model ALTIMA | Year 2013 | Primary Color | Secondary Color (If applicable) |
|---|---|---|---|---|---|
| Vehicle Trade-In | Make | Model | Year | Vehicle Identification Number of Trade-In | |

**Section 7 - Odometer Disclosure**

I, CONSUMER PORTFOLIO SERVICES _____ (sellers printed name) hereby state that the Odometer now reads

60287 _____ (no tenths) miles, and the best of my knowledge that it reflects the actual miles, **UNLESS** one
of the items below is checked:

☐ 1. **EXCEEDS MECHANICAL LIMITS** - I hereby certify that to the best of my knowledge the odometer reading
reflects the amount of mileage in excess of its mechanical limits.

☐ 2. **WARNING - ODOMETER DISCREPANCY** -I hereby certify that the odometer reading is not the actual mileage.

**Section 8 - Sales Price Information - Signatures**

| | Printed Name of Seller    DESHA BEAVERS |
|---|---|
| Full Sales Price of Vehicle _____ | Signature of Seller |
| Less Trade-In _____ | Printed Name of Buyer    DESHA BEAVERS |
| Net Taxable Income _____ | Signature of Buyer |

**SECTION 9 - WARNING**

**WARNING:** It is a FELONY for any taxpayer to willfully attempt to evade or defeat the payment of any tax, penalty, or interest due under state law; OR for any person to willfully assist a taxpayer in evading or defeating the payment of any tax, penalty, or interest due under state law.

This form may be reproduced so long as the format and language are not changed from the original.                    10-313

# EXHIBIT H

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

TPOC 850096272

## VEHICLE REGISTRATION APPLICATION

**REVENUE DIVISION**

TRANSACTION TYPE

repo title

**STATE OF ARKANSAS**
DEPARTMENT OF FINANCE & ADMINISTRATION
PO BOX 1272
LITTLE ROCK, AR 72203

| LICENSE NO. | INV. TYPE | USE CODE | DECAL NO. | EXPIRATION DATE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|
| | | | | | 1N4AL3AP5DN540953 |

| YEAR | MAKE | MODEL | BODY | CYL | COLOR | FUEL | UNLADEN WT. | GROSS WT. | DSP | AXLES | PREVIOUS TITLE NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | NISSAN | ALITMA | | | WHITE | | | | | | |

| TITLE CODE | PUR. TYPE | PUR. DATE | DEALER # | OD CODE | OD READING | CHECK IF APPLICABLE |||||| 
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | DAMAGE | PREV. DAMAGE | LEASE | PRORATE | PENALTY | MAIL |

**COMPLETE ONLY IF CONVERTING CLASS TWO (2) THROUGH EIGHT (8) TRUCK LICENSE**

| OLD LIC. NO. | OLD WT. | OLD FEE | IF INVOLUNTARY, SHOW AMT. OVERLOAD AND SUMMONS NUMBER || VALIDATION PERIOD FOR DRIVE OUT OR INTRANSIT ||
|---|---|---|---|---|---|---|
| | | | OVERLOAD WEIGHT | SUMMONS NUMBER | BEGINNING DATE & TIME: | ENDING DATE & TIME |

**OWNER NAME**

| LAST | FIRST | REL. |
|---|---|---|
| | | |
| LAST | FIRST | |

COMPANY  CONSUMER PORTFOLIO SERVICES

| ARKANSAS ADDRESS | CTY CODE |
|---|---|
| 8700 HWY 70 | |
| N LITTLE ROCK, AR 72117 | |

| TITLE MAILING ADDRESS | CTY CODE |
|---|---|
| HOLD TITLE | |

| RENEWAL MAILING ADDRESS | CTY CODE |
|---|---|
| | |

| FIRST LIENHOLDER | CONTRACT DATE | REGISTRATION FEE | REPLACEMENT FEE |
|---|---|---|---|
| | | CREDIT | TRANSFER FEE |
| | | ADDITIONAL FEE | TITLE FEE |
| SECOND LIENHOLDER | CONTRACT DATE | PRORATED FEE | LIEN FEE |
| | | SPECIAL FEE (1) | PENALTY |
| | | SPECIAL FEE (2) | POSTAGE |
| REVENUE OFFICE CITY | OFFICE NUMBER | COUNTY | SPECIAL FEE (3) | TOTAL REG. FEES |
| ARKANSAS REVENUE AGENT | DATE | CTY CODE | SALES TAX RECEIPT NUMBER | |

SIGNATURE OF LIENHOLDER (IF APPLICABLE)

| SIGNATURE OF OWNER(S) | PERSONAL PROPERTY ACCT. NO. |
|---|---|
| *Detra Beaner* (signature) | |

10-381 / 06-30-2000

# EXHIBIT I

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others
similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

## STATE OF ARKANSAS
## DEPARTMENT OF FINANCE AND ADMINISTRATION
## APPLICATION FOR TITLE

VEHICLE IDENTIFICATION NUMBER

1N4AL3AP5DN540953

| | LICENSE PLATE NO | LICENSE TYPE/USE | DECAL NUMBER | EXPIRATION DATE | |
|---|---|---|---|---|---|
| | Redacted | DL - DLR PC | | 12/31/2016 | |

| YEAR | MAKE | MODEL | BODY | COLOR | FUEL | CYLINDERS |
|---|---|---|---|---|---|---|
| 2013 | NISS | ALTIMA | SD | UNK | G | 4 |

| ODOMETER | ODOMETER CODE | DISPLACEMENT | AXLES | WEIGHT | BRAND |
|---|---|---|---|---|---|
| 60287 | Actual | 0 | 0 | 3108 | |

| | TITLE NUMBER | TITLE PRINT STATUS | PREV TITLE NUMBER | Total Tax & Fees: |
|---|---|---|---|---|
| | 761005527489 | PICK UP | REPO | $11.39 |

| PURCHASE INFORMATION | | TAX INFORMATION | | FEE INFORMATION | |
|---|---|---|---|---|---|
| Purchase Price | $0.00 | | | Title Fee | $10.00 |
| Extended Warranty | $0.00 | | | Postage Fee | $0.39 |
| Trade In | $0.00 | | $0.00 | Transfer Fee | $1.00 |
| Taxable Price | $0.00 | | | Base Registration Fee | $0.00 |
| | | | | | $11.39 |

OWNERS

CONSUMER PORTFOLIO SERVICES
8700 HIGHWAY 70
NORTH LITTLE ROCK AR  72117-9567

LIENHOLDERS

RENEWAL MAILING

8700 HIGHWAY 70
NORTH LITTLE ROCK        AR 721179567

TITLE MAILING

TITLE ASSIGNMENT

CONSUMER PORTFOLIO SERVICES

BENEFICIARY

RELATIONSHIP: SAME OWNER

APPLICANT SIGNATURE:_____

Central Little Rock Revenue
60-06
1900 W 7TH RM 1030
(501)682-7076
dthurman 07-26-2016

# EXHIBIT J

Appended to:

## CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

## AFFIDAVIT OF REPOSSESSION OF MOTOR VEHICLE

I, We, do hereby solemnly swear to affirm that the following described vehicle

was repossessed from, DEBORAH C PIERRE-CHARLES

pursuant to the terms of a Conditional Sales Contract, Chattel Mortgage or

Security Agreement, a copy of which is attached, on the

_24th_ day of _June_ , 20 16 .

Description of Vehicle:

| NISSAN | 2013 | 4D |
|--------|------|------|
| Make | Year Model | Body Style |

I N 4 A L 3 A P 5 D N 5 4 0 9 5 3
Vehicle Identification Number

The foregoing statements are true and correct to the best of my knowledge

and belief. CONSUMER PORTFOLIO SERVICES, INC.

_____
Printed Name of Person, Firm or Corporation

MINH NGUYEN
Printed Name of Authorized Person

_____
Signature of Authorized Person

7-20-16
Date

May-08

# EXHIBIT K

Appended to:

## CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others
similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.



**CONSUMER   PORTFOLIO   SERVICES,   INC.**

*19500 Jamboree Road*
*Irvine, California 92612*
*Telephone 949-753-6800*

July 20, 2016

Vin #:  1N4AL3AP5DN540953

Vehicle Description:  2013Nissan Altima

Consumer Portfolio Services Inc. (CPS Inc.) has consigned the above mentioned vehicle to be resold at
Adesa Little Rock..

Minh Nguyen

Consumer Portfolio Services Inc. (CPS Inc.)

PO Box 57071

Irvine CA 92619

(888) 258-4330 Ext. 15728

# EXHIBIT L

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others
similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

14

## AFFIDAVIT FOR ISSUANCE OF A REPOSSESSION TITLE FOR
## AN OUT OF STATE VEHICLE TO BE OFFERED FOR SALE AT AN ARKANSAS AUTO AUCTION

Pursuant to Arkansas Code §27-14-907(b)(3), an Arkansas repossession title may not be issued for a motor vehicle that was last registered in a state other than Arkansas if the last title reflecting the lienholder and debtor is not available, unless the vehicle is to be offered for sale at an Arkansas auto auction. Sale of such vehicles at an Arkansas auto auction must be in accordance with a written agreement between the lienholder and the Arkansas auto auction, and in accordance with Arkansas statutes and requirements and procedures concerning auto auctions.

### Vehicle Information

| Year | Make | Model | Vehicle Identification Number |
|------|------|-------|-------------------------------|
| 2012 | NISSAN | ALTIMA | 1N4AL3AP5DN540953 |

### Repossessing Lienholder Information

Name of Repossessing Lienholder

CONSUMER PORTFOLIO SERVICES, INC

Address

PO BOX 57071

City, State, Zip

IRVINE   CA  92619

### Arkansas Auto Auction Information

Name of Arkansas Auto Auction and License Number Issued by the Arkansas Auctioneers Licensing Board

ADESA Little Rock            2485

Address

8700 Hwy 70

City, State, Zip

North Little Rock, AR 72117

I hereby swear and affirm that the lienholder listed herein has a written agreement with the auction listed herein to sell the lienholder's repossessed vehicles, and the vehicle described above will be offered for sale at such Arkansas auction.

MINH NGUYEN

Printed Name of Person Authorized to Sign for Lienholder

Signature

7-20-16

Date

This affidavit may be copied or reprinted as long as it is not altered from the original language and format.

# EXHIBIT M

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

Deborah C. Pierre-Charles
Redacted


July 28, 2016


CPSI
Auto Recovery Dept.
P.O. Box 57071
Irvine CA 92619-7071


Re:   Account # 0016009201;
      Property in 2013 Nissan Altima VIN: 1N4AL3AP5DN540953


To Whom It May Concern:


I am writing about the property that was in the trunk of my car when it was repossessed.

I contacted Pitbull Recovery LLC, which only gave me some of the property that was in the vehicle. Pitbull told me that they did not remove the property that was in the trunk and that my car is now in Arkansas.

Please tell me how I can get back the property that was in my car's trunk when it was repossessed.


Sincerely,

Deborah C. Pierre-Charles

# EXHIBIT N

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.



Home | Customers | Dealers | Investors | Careers | About | Contact

CUSTOMER ACCESS ▶   DEALER ACCESS ▶

## Payoff Quote
**Welcome** DEBORAH C PIERRE-CHARLES

**MANAGE YOUR AUTO LOAN**

**PAYMENTS / ACCOUNT**
Payment Options
Make Online Payment
Recurring Payments
Pay by MoneyGram
Pay by Western Union
View Amount Due
View Statements
View Payment History
Request Payoff Quote
Request for Extension

**ADMINISTRATIVE**
Update Mailing Address
View Mailing Instructions
Cease and Desist Requests
Manage Consents
Arbitration Forms

**CUSTOMER SERVICE**
Contact Us
Frequently Asked Questions
Resources
Dealer Locator
Log Out

Your payoff amount is $8,379.24 and is valid through August 15, 2016 providing no further activity appears on your account.

After August 15, 2016 the payoff amount will increase each day by 3.67.

This payoff amount does not include any fees that may accrue or any payments that may be returned.
The payoff should be sent to:

**Regular Mail:**
CPS Inc.
P.O. Box 57071
Irvine, CA 92619

**Overnight Delivery:**
CPS Inc.
19500 Jamboree Road
Irvine, CA 92612



# EXHIBIT O

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

**Consumer Portfolio Services, Inc.**
**Asset Recovery Department**
P.O. Box 57071
Irvine, California 92619-7071

Date:   08/09/16

# EXPLANATION OF CALCULATION OF SURPLUS OR DEFICIENCY



000002

To:

DEBORAH C PIERRE-CHARLES

Redacted

Re:     **Account Number:**    0016009201
      Vehicle:                2013 NISSAN ALTIMA
      VIN #:                  1N4AL3AP5DN540953

## CALCULATION OF SURPLUS OR DEFICIENCY

| | | |
|---|---|---|
| 1. | **Amount You Owe Us**<br>(including interest, other fees, and any other amounts added to your debt, as allowed by law) | $15,910.96 |
| 2. | **Sale Price of Collateral** | $8,400.00 |
| 3. | **Unpaid Amount** | $7,510.96 |
| 4. | **Total Expenses** | $835.25 |
| 5. | **Total Credits / Rebates** | $0.00 |
| 6. | **Amount of Surplus**<br>This is the amount we owe you. | $0.00 |
| 7. | **Amount of Deficiency**<br>This is the amount you owe us. | $8,346.21 |

Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency.

If you are unable to pay the amount stated, contact our office for other arrangements.

If you have any questions regarding this explanation, you may call us at 800-342-9243 or write us at P.O. Box 57071, Irvine, CA 92619-7071.

Bankruptcy Notice:  This notice is not an attempt to collect a debt from any bankruptcy petitioner.  If you have filed a bankruptcy petition that covers the vehicle described above, then your personal liability to pay for the vehicle, if any, will be determined in the bankruptcy proceeding.  This notice relates to our enforcement of our lien against the vehicle.

dfstmt

# EXHIBIT P

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

Close Window
Page 1 of 1



CUSTOMER ACCESS ▶   DEALER ACCESS ▶        Select Language ▼

**CPS** Consumer Portfolio Services, Inc.

Home | Customers | Dealers | Investors | Careers | About | Contact

# GET ON IT.

## Payment History

**Welcome** DEBORAH C PIERRE-CHARLES

**PAYMENTS / ACCOUNT**

Payment Options

Make Online Payment

Recurring Payments

Pay by MoneyGram

Pay by Western Union

View Amount Due

View Statements

View Payment History

Request Payoff Quote

Request for Extension

**ADMINISTRATIVE**

Update Mailing Address

View Mailing Instructions

Cease and Desist Requests

Manage Consents

Arbitration Forms

**CUSTOMER SERVICE**

Contact Us

Frequently Asked Questions

Resources

Log Out

| | |
|---|---|
| Item Financed: | 2013 NISSAN ALTIMA |
| Amount Financed: | $14,720.85 |
| Contract Amount: | $14,720.85 |
| Contract Date: | 12-19-2015 |
| Maturity Date: | 12-18-2020 |
| Next Due Date: | 02-18-2016 |

| Posting Date | Transaction Date | Interest Paid | Principal Paid | Fees Assessed | Fees Paid | Total Paid | Principal Balance | Description |
|---|---|---|---|---|---|---|---|---|
| 05-31-2016 | 05-31-2016 | | | $19.60 | | | $14,549.30 | Late Charge Fee |
| 04-29-2016 | 04-29-2016 | | | $19.60 | | | $14,549.30 | Late Charge Fee |
| 03-29-2016 | 03-29-2016 | | | $19.60 | | | $14,549.30 | Late Charge Fee |
| 02-29-2016 | 02-29-2016 | | | $19.60 | | | $14,549.30 | Late Charge Fee |
| 01-15-2016 | 01-15-2016 | $220.51 | $171.55 | | | $392.06 | $14,549.30 | Regular Payment |



Questions? Chat with a customer service rep now.

# EXHIBIT Q

Appended to:

CLASS ACTION COMPLAINT AND JURY DEMAND

*DEBORAH PIERRE-CHARLES, on behalf of herself and others
similarly situated vs. CONSUMER PORTFOLIO SERVICES, INC.*

Docket No.

## Deborah PIERRE-CHARLES

Redacted

August 16, 2016

Recovery Department
CPS INC
19500 Jamboree Rd, Irvine, Ca 92612

Dear Supervisor Richard Silva,

I received your Explanation of Calculation of surplus or Deficiency (account number 0016009201).  Please

Provide me with an itemization of the $ 835.25 amount identified as "Total Expenses".  Also, I have not heard

Back from you yet regarding my request as to how I can obtain my personal property that was in the trunk when the vehicle was repossessed.  The repossession company told me that they did not remove the property from the trunk when it was removed from their lot and taken out of state.

Thank You,

Regards,

Deborah PIERRE-CHARLES

# Civil Case Information Statement

## Case Details: MERCER | Civil Part Docket# L-002058-17

**Case Caption:** PIERRE-CHARLES DEBORAH  VS
CONSUMER PORTFOLIO S E

**Case Initiation Date:** 09/20/2017

**Attorney Name:** BHARATI SHARMA PATEL

**Firm Name:** THE WOLF LAW FIRM LLC

**Address:** 1520 US HWY 130 SUITE 101
NORTH BRUNSWICK NJ 08902

**Phone:**

**Name of Party:** PLAINTIFF : Pierre-Charles, Deborah, C

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**
This is a putative class action raising consumer protection claims.  Single-judge case management and expanded discovery are appropriate because of the inherent complexity involved in determining class certification, effectuating class notice, and managing and adjudicating the matter on a class wide basis. Although this case has been designated as 508 "Complex Commercial", it is not appropriate for the Complex Business Litigation Program because it is a consumer protection case.

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/20/2017
Dated

/s/ BHARATI SHARMA PATEL
Signed