NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH PIERRE-CHARLES, *on behalf of herself and others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> CONSUMER PORTFOLIO SERVICES, INC., <br><br> Defendant. | Civil Action No. 17-10025-BRM-DEA <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Consumer Portfolio Services, Inc.'s ("CPSI's") Partial Motion to Dismiss. (ECF No. 12.) Plaintiff Deborah Pierre-Charles ("Pierre-Charles") opposes the Motion. (ECF No. 16.) Having reviewed the parties' submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, CPSI's Partial Motion to Dismiss is **GRANTED.**

**I.    BACKGROUND**

For the purposes of the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

1

This matter arises out of expenses charged to Pierre-Charles and others similarly situated as a result of the repossession of their vehicles. Pierre-Charles entered into a retail installment sales contract ("RISC") with NJ's Auto Sales, a dealership, (the "Dealership") to finance her 2013 Nissan Altima. (ECF No. 1-1 ¶ 10.) The RISC included the following provisions:

> a. We may take the vehicle from you. If you default we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. . . . If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

(*Id.* ¶ 13; Ex. A to ECF No. 1-1 at 3(d).) When Pierre-Charles took possession of the Nissan, the dealership provided her with a temporary New Jersey registration. (ECF No. 1-1 ¶ 14.) The dealership never provided Pierre-Charles with the title or a permanent registration for the Nissan. (*Id.* ¶ 15.)

In late December 2015, the dealership assigned the RISC to CPSI. (*Id.* ¶ 18.) At the time that CPSI took assignment of the RISC, the title for the Nissan did not identify CPSI or the dealership as a lienholder for the Nissan. (*Id.* ¶ 22.) At some point, Pierre-Charles defaulted on payments. Consequently, CPSI directed its agent to retain American Lending Solutions ("America"), which, in turn, directed Pitbull Recovery, LLC ("Pitbull") to repossess the Nissan. (*Id.* ¶¶ 43-45.) Pierre-Charles alleges Pitbull was paid by CPSI or its agent for its services related to the repossession of the Nissan (the "CPSI-Pitbull Agreement"). (*Id.* ¶ 48.) Pierre-contends the CPSI-Pitbull Agreement included the following services:

> a) locating and taking possession of collateral motor vehicles;
> b) transporting and storing collateral vehicles;
> c) serving as a constructive bailee for personal property contained in the collateral vehicles at the time of repossession;
> d) serving as a constructive bailee for repossessed vehicles;
> e) releasing to consumer obligors or their agents personal property contained within collateral vehicles at the time of repossession;

2

> f) releasing to consumer obligors or their agents repossessed collateral vehicles; and
>
> g) creating and maintaining certain records related to the services that Pitbull performed on behalf of CPSI.

(*Id.* ¶ 51.)

On June 22, 2016, Pitbull repossessed the Nissan. (*Id.* ¶ 47.) Between June 22 and July 22, Pitbull stored certain personal property belonging to Pierre-Charles that had been in the passenger compartment of her vehicle. (*Id.* ¶¶ 47-57.) On July 22, 2016, Pierre-Charles went to Pitbull to collect her belongings. (*Id.* ¶ 57.) She alleges Pitbull charged her $95 to release her personal property ("Storage Fee"). (*Id.* ¶¶ 61-63.) Pierre-Charles paid the $95 as demanded and received a "Receipt for Redeeming Personal Property" and an "Order to Repossess." (*Id.* ¶¶ 57, 66.) Pierre-Charles alleges:

> The $95 was not part of CPSI's reasonable expenses of storing [Pierre-Charles's] personal property in the vehicle at the time it was repossessed. The $95 fee charged to [Pierre-Charles] for the release or her personal property was not a storage fee. CSPI did not pay Pitbull a fee for the storage of personal property found in vehicles repossessed from New Jersey consumers when the consumer did not collect such property.

(*Id.* ¶¶ 64-65.)

On August 5, 2016, CPSI sold Pierre-Charles's Nissan at an Arkansas auto auction. (*Id.* ¶ 116.) On August 9, 2016, CPSI sent Pierre-Charles an "Explanation of Calculation of Surplus or Deficiency," indicating that her vehicle had been sold, that CPSI had charged her $835.25 in total expenses, and that she owed a deficiency balance of $8,346.21. (ECF No. 1-1, Ex. O.) The total expenses were not itemized. (*Id.*)

On September 20, 2017, Pierre-Charles filed a Complaint in the Superior Court of New Jersey, Mercer County, alleging violations of the New Jersey Consumer Fraud Act ("NJCFA"); New Jersey Uniform Commercial Code ("NJUCC"); Consumer Fraud Act ("CFA"); and

conversion and negligence. (ECF No. 1-1.) On October 30, 2017, CPSI removed the matter to this Court. (ECF No. 1.) On December 8, 2017, CPSI filed a Partial Motion to Dismiss Pierre-Charles's NJCFA claims. (ECF No. 12.) Pierre-Charles opposes the Motion. (ECF No. 16.)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

4

required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

**B. Federal Rule of Civil Procedure 9(b)**

Fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2007). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual

5

background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

### III. DECISION

#### A. NJCFA

CPSI argues "the Storage Fee was merely incidental to the repossession of the vehicle, as it was not directly related to the marketing, sale or servicing of the Vehicle, and was not assessed as part of CPS[I's] efforts to collect the debt." (ECF No. 12-1 at 6.) Pierre-Charles argues "well-settled New Jersey case law hold[s] that [] the CFA applies to deceptive and unconscionable commercial practices by an assignee creditor in connection with repossession and post-repossession collection activities." (ECF No. 16 at 11.)

The NJCFA states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, *or with the subsequent performance of such person as aforesaid*, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J. Stat. Ann. § 56:8-2 (emphasis added). The NJCFA defines "sale" to include "any sale, rental or distribution, offer for sale, rental or distribution[,] or attempt directly or indirectly to sell, rent or distribute." *Id.* 56:8–1(e). It defines "merchandise" as "any objects, wares, goods, commodities,

services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8–1(c). It defines a "person" as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof." N.J.S.A § 56:8-1(d).

Courts have interpreted N.J. Stat. Ann. § 56:8-2 to require the following three elements to state a cause of action under the NJCFA: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1087 (N.J. 2007)).

An "unlawful practice" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby
> . . . .

N.J. Stat. Ann. § 56:8-2. "The [NJCFA] creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 499 (D.N.J. 2009) (quoting *Vukovich v. Haifa*, No. 03-737, 2007 WL 655597, *9 (D.N.J. Feb 27, 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994))). Affirmative acts require no showing of intent on behalf of the defendant. *See Cox*, 647 A.2d at 462; *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977). "Thus, a defendant who

7

makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence or the intent to deceive." *Vukovich*, 2007 WL 655597, at *9 (citation omitted). "In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud." *Id.*

"The third category of unlawful acts consists of violations of specific regulations promulgated under the [NJCFA]." *Cox*, 647 A.2d at 462. "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id.* (citation omitted). Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the CFA can give rise to a CFA claim. *See Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090, at *5 (N.J. Super. Ct. App. Div. June 22, 2006); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 552-56 (N.J. 1997). However, the CFA does not create strict liability for violations of other statutes, regulations, or rules not promulgated under the CFA. *See Henderson*, 2005 WL 4127090, at *5.

An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005). A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 964 A.2d at 749. Courts support alleged damages based on an out-of-pocket theory or a benefit of the bargain theory. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99-103 (D.N.J. 2011); *Thiedemann*, 872 A.2d at 792. "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015). "A benefit-of-the-bargain theory requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Id.* (citation omitted).

8

Additionally, plaintiffs must set forth allegations sufficient to show those losses are causally connected to defendant's alleged conduct. *Bosland*, 964 A.2d at 749. It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008). This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey*, 558 F. Supp. 2d at 527.

In *Jefferson Loan Company, Inc. v. Session*, the court held that "an assignee of a RISC may be liable under the CFA for its own unconscionable commercial practices and activities related to its repossession and collection practices in connection with the subsequent performance of a RISC[.]" 938 A.2d 169, 181 (N.J. Super. Ct. App. Div. 2008).

This Court has also concluded "that a CFA claim may be brought against a party who demands payment for services in connection with the subsequent performance of a loan, even if that party is not the assignee of the loan." *Pollitt v. DRS Towing, LLC*, No. Civ. 10-1285, 2011 WL 1466378, at *5 (D.N.J. Apr. 18, 2011). In *Pollitt*, State Line Auto Action, a defendant, stored the plaintiff's vehicle after it was repossessed and charged the plaintiff for transportation and storage services it incurred in performing its contract with Wachovia. *Id.* at 5.[1] State Line Auto Action also refused to release the plaintiff's vehicle unless she paid a sum certain. *Id.* at 7. The Court found the plaintiff's "claim may proceed based on her allegation that Wachovia engaged in 'unconscionable commercial practices.'" *Id.* "Unlike fraudulent misrepresentation claims, unconscionable commercial practices need not induce the purchase, given that the Act also targets the subsequent performance." *Id.* (citations omitted). The Court further found Wachovia's

---

[1] The plaintiff had originally entered into a RISC with Toyota of Runnemede in order to finance her vehicle. *Id.* at 1. Toyota then assigned the RISC to Wachovia. *Id.*

argument that the plaintiff was attempting to recast her claim as a CFA claim when it was merely a breach of contract claim to have no merit. The Court stated:

> Here, Plaintiff has alleged that Wachovia engaged in unconscionable commercial practices by allowing DRS to charge her fees to regain personal property that was in the vehicle, by requiring her to travel to Waverly, N.Y. to redeem her vehicle, and by authorizing State Line to hold Plaintiff's vehicle until she paid the transportation and storage fees charged by State Line. Plaintiff's claims relate to Wachovia's practices beyond rights and obligations stated in the RISC. Thus, Plaintiff has adequately stated a CFA claim based on the alleged "unconscionable business practices."

*Id.*

Here, much like in *Pollitt*, Pitbull sought payment for storage costs out of the repossession of Pierre-Charles's vehicle. Because this Court has found "a CFA claim may be brought against a party who demands payment for services in connection with eh subsequent performance of a loan, even if that party is not the assignee of the loan," the CFA clearly applies to Pierre-Charles's claim. *Id.* at 5.

Having addressed the scope of the CFA, the Court must determine whether Pierre-Charles's Complaint adequately alleges a CFA claim against CPSI. Pierre-Charles's principal argument is that Pitbull charged her twice for the storage of her personal property because it charged CPSI originally and then charged her when she went to recover her property. (ECF No. 16 at 13, 16.) Specifically, Pierre-Charles alleges "that the fee in question, a double charge of a property release fee, is not permitted by the RISC." (*Id.* at 16.)

To the extent Pierre-Charles alleges CPSI misrepresented the amount she would have to pay to redeem her automobile, this allegation must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. *Pollitt*, 2011 WL 1466378, at *6. "An affirmative misrepresentation under the CFA must be one which is material to the transaction and which is a

10

statement of fact, found to be false, made to induce the buyer to make the purchase." *Id.* Here, Pierre-Charles alleges Pitbull refused to release her belongings unless she paid the $95 storage fee. However, Pierre-Charles fails "to allege that any misrepresentation regarding the redemption amount induced her to finance her vehicle." *Pollitt*, 2011 WL 1466378, at *7. This is because the misrepresentations took place after Pierre-Charles entered the RISC and therefore could not have affected her initial decision to purchase the vehicle. *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 543 (N.J. Super. Ct. App. Div. 1985) (stating fraudulent misrepresentation claims need to induce the purchase). Therefore, Pierre-Charles cannot base her CFA claims on a misrepresentation theory.

However, a CFA claim in this matter may proceed under an allegation that CPSI engaged in "unconscionable commercial practices." The standard for unconscionability is a "lack of good faith, honesty in fact and observance of fair dealing." *Cox*, 647 A.2d at 462. However, "'a breach of warranty, or any breach of contract, is not per se unfair or unconscionable'. . . . [Instead,] substantial aggravating circumstances must be present in addition to the breach." *Id.* (quoting *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990, 998 (N.J. Super. Ct. App. Div. 1985)). Here, the RISC stated "[i]f any personal items are in the vehicle, we may store them for you at your expense." (ECF No. 1-1, Ex. A.) Accordingly, a charge for storing personal items is covered by the RISC and not beyond the rights and obligations stated therein. Therefore, Pierre-Charles must plead aggravating circumstances. While a double charge may be unconscionable, Pierre-Charles's Complaint is ambiguous as to whether she was indeed double charged. Specifically, the Complaint is ambiguous as to whether CPSI paid Pitbull a storage fee. In the beginning of her Complaint Pierre-Charles alleges, "Pitbull was paid by CPSI or its agents for its

services related to Pitbull's repossession of the Nissan." (ECF No. 1-1 ¶ 48.) However, later she alleges:

> The $95 was not part of CPSI's reasonable expenses of storing [Pierre-Charles's] personal property in the vehicle at the time it was repossessed. The $95 fee charged to [Pierre-Charles] for the release or her personal property was not a storage fee. CSPI did not pay Pitbull a fee for the storage of personal property found in vehicles repossessed from New Jersey consumers when the consumer did not collect such property.

(*Id.* ¶¶ 64-65.) Moreover, the "Explanation of Calculation of Surplus or Deficiency" does not indicate she was charged for storage of her personal items. (Ex. O to ECF No. 1-1.) Therefore, Pierre-Charles's allegations are inconsistent. Pierre-Charles's attempt to clarify these allegations in her Opposition is improper. A party cannot amend a complaint by the brief in opposition to a motion to dismiss. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Therefore, Pierre-Charles has failed to allege an unlawful practice. The Court will provide Pierre-Charles with a chance to amend its Complaint by no later than August 10, 2018, to cure the deficiencies in this opinion.

Pierre-Charles also alleges CPSI engaged violated the CFA because:

> CPSI did not have a lien on the personal property contained within the vehicles of Plaintiff and those similarly situated. As such, CPSI has no basis to condition the release of such property on the payment of a processing fee.

(ECF No. 16 at 13-14.) The Court need not consider whether this or any other allegation in the Complaint qualifies as an unlawful practice because it also finds Pierre-Charles has failed to allege it suffered an "ascertainable loss. Because the Complaint is ambiguous as to whether Pierre-Charles was double charged or whether CPSI paid Pitbull a storage fee, the Court cannot ascertain at this time, as Pierre-Charles requests, whether the "$95 fee constitutes an overcharge." (ECF No.

16 at 18.) An ascertainable loss must be quantifiable or measurable. *Thiedemann*, 872 A.2d at 793. Accordingly, CPSI's Partial Motion to Dismiss is **GRANTED**.

**IV.    CONCLUSION**

For the reasons set forth above, CPSI's Partial Motion to Dismiss is **GRANTED**. Counts One and Three are **DISMISSED**. Pierre-Charles may file an Amended Complaint by August 10, 2018, to cure the deficiencies in this opinion.

Date: July 16, 2017                                              */s/ Brian R. Martinotti*
                                                                            **HON. BRIAN R. MARTINOTTI**
                                                                            **UNITED STATES DISTRICT JUDGE**